**ALLIED–SIGNAL, INC., Plaintiff,**

v.

**Manuel LUJAN, Jr., Defendant.**

**No. C 89 2893–FMS.**

United States District Court,
N.D. California.

Feb. 7, 1990.

Barry P. Goode, Jane Elizabeth Lovell, Carole S. Ungvarsky, McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., for plaintiff.

Richard B. Stewart, Asst. Atty. Gen., Land & Natural Resources Div., Larry J. Bradfish, Scott A. Schachter, William W. Westerfield, III, U.S. Dept. of Justice, Washington, D.C., for defendant.

## ORDER

FERN M. SMITH, District Judge.

Plaintiff, Allied–Signal, Inc., filed this action for a declaratory judgment and injunctive relief, charging that the Navy and the Department of the Interior ("government" or "federal defendants") violated the Endangered Species Act ("ESA") when they designed the Remedial Action Plan aimed at cleaning up hazardous waste at the Concord Naval Station.[1] Specifically, plaintiff claims that the federal defendants' plan to drain a marsh (parcel 572) on the affected property will result in the killing of all the salt-marsh harvest mice currently residing there. (The salt-marsh harvest mouse is on the Endangered Species List.)[2]

Plaintiff is refreshingly candid about its motivations. Dispensing with any rhetoric about its deep feeling for the salt-marsh harvest mouse, plaintiff admits that its interest in the matter of the mouse is purely

1. Allied–Signal's liability for costs related to the clean-up of the Concord Naval Station is the subject of a related case, *U.S. v. Allied,* 736 F.Supp. 1553 (N.D.Cal.1990).

2. Plaintiffs rely on a portion of the ESA, 16 U.S.C. § 1540(g), entitled "Citizen Suits", which provides as follows:

(1) Except as provided in paragraph (2) of this subsection any person may commence a civil suit on his own behalf—

(A) to enjoin any person, including the United States ... who is alleged to be in violation of any provision of this chapter or regulation issued under the authority thereof;

pecuniary. Plaintiff argues as follows: If the federal defendants had complied with the ESA, they could not have come up with this particular remedial action plan. A remedial action plan that does not include excavation of the marsh would both comply with the ESA and be cheaper to implement. Since plaintiff may be held liable for some of the costs of effecting the remedial plan, plaintiff can save itself some money by insisting that defendants comply with the ESA.

Defendants filed a motion to dismiss, alleging that plaintiff lacks standing to bring this action under the Endangered Species Act.

### Standing

■ The doctrine of standing encompasses two sets of principles: constitutional and prudential. Constitutional standing requirements must be satisfied in every federal case, without exception. The Article III "cases and controversies" limitation on federal court jurisdiction requires the party who invokes the Court's authority to show (1) actual or threatened injury (2) suffered as a result of the allegedly illegal conduct of the defendant, which (3) fairly can be traced to the challenged action and (4) is likely to be redressed by a favorable decision. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982).

■ Prudential standing involves a different set of principles and requirements, most notably, for our purposes, the condition that plaintiff's complaint fall within the "zone of interests" to be protected or regulated by the statute or constitu-

tional guarantee in question. *Valley Forge*, 454 U.S. at 464, 102 S.Ct. at 754. Unlike the Article III requirements, prudential limitations on standing are subject to elimination by Congress. *Center for Auto Safety v. National Highway Traffic Safety Administration*, 793 F.2d 1322, 1335 (D.C.Cir.1986).

Plaintiff argues that Congress intended to make standing under the ESA coterminous with constitutional standing requirements. That intent, argues plaintiff, eliminates prudential principles from consideration in determining standing under the ESA. Because the Court concludes that plaintiff fails to meet the standing requirements imposed by the Constitution, the issue of whether prudential standing is necessary under the ESA is not addressed.[3]

■ Plaintiff's claim fails to meet Article III standards in three ways: First, plaintiff's alleged injury, increased costs (for which it may or may not be held liable) due to implementation of a clean-up plan which allegedly harms the mouse, is not "harm suffered as a result of the allegedly illegal conduct of the defendant." Secondly, plaintiff's harm cannot be "fairly traced to the challenged action." *See Valley Forge*, 454 U.S. at 472, 102 S.Ct. at 758. Plaintiff claims that compliance with the ESA would result in less costly clean-up of the contaminated site; but violation of the ESA is not what makes plaintiff potentially liable for the clean-up costs, nor is the alleged harm to the mouse in itself the cause of any injury to plaintiff. In sum, plaintiff's injury, to the extent that one may exist, is not proximately caused by defendant's alleged

**3.** If the Court were to apply prudential standing principles to this claim, however, plaintiff again would fall short. Plaintiff asserts that its own interest and that of the mouse happen to coincide in this instance, and that such coincidence should not preclude it from asserting a claim on behalf of the mouse. The Supreme Court has held that a plaintiff fails to meet prudential standing requirements "if plaintiff's interests are so marginally related to or consistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Clarke v. Securities Industry Association*, 479 U.S. 388, 399, 107

S.Ct. 750, 757, 93 L.Ed.2d 757 (1987). Given that prudential considerations come into play only *after* a plaintiff has alleged a case or controversy under Article III, it is difficult to imagine what entity would fail the prudential standing test if Allied were thought to meet it in this case. Nothing in Allied's corporate structure, purpose, or history suggests that it has ever been concerned with or has a cognizable interest in preserving and protecting endangered species. Allied's goals clearly are unrelated to the objectives Congress sought to further by enacting the ESA.

violation of the ESA.[4]

Finally, the remedy plaintiff seeks—an order directing defendants to comply with the ESA—would not necessarily redress plaintiff's alleged injury. For instance, an alternative remedial plan, one which did not call for excavation of the marsh, and thus avoided all harm to the mouse, might be even more expensive to execute, thus resulting in even greater "injury" to plaintiff. (If presented with that option, plaintiff presumably would sacrifice the mouse.)

For the reasons discussed above, plaintiff lacks standing to bring this action under the Endangered Species Act. Accordingly, defendant's motion to dismiss is GRANTED.

---

4. In support of the argument that it meets constitutional standing requirements, plaintiff relies principally on *Fair v. United States E.P.A.*, 795 F.2d 851 (9th Cir.1986), which it claims is directly on point. The Court disagrees. In *Fair*, residents of a sewer assessment district brought suit under the Clean Water Act (CWA); the gravamen of their complaint was that they would suffer increased tax assessments due to E.P.A.'s failure to explore potentially more cost-effective "innovative and alternative technologies", as required by the CWA. The Court found that plaintiff's pecuniary interest was a sufficient basis for constitutional standing. What Allied neglects to mention is that the *Fair* Court relied on a portion of the CWA which envisioned injuries of precisely the kind alleged by plaintiffs in that case. *Id.* at 853.